IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

RONES SAGESSE,

    Plaintiff,

v.                                          CASE NO. 1:20-cv-238-AW-GRJ

WARDEN MILTON HICKS, et al.

    Defendants.
_____/

# REPORT AND RECOMMENDATION

This matter comes before the Court on Defendant Warden Milton Hicks ("Warden") Motion to Dismiss Plaintiff's First Amended Complaint, ECF No. 12, under Federal Rule of Civil Procedure 12(b)(6) on the grounds that 42 U.S.C. § 1983 does not authorize claims for supervisor liability for Plaintiff's alleged constitutional deprivation. ECF No. 32. In opposition to the motion Plaintiff says he has not alleged liability against the Warden based upon respondeat superior or vicarious liability. Rather Plaintiff argues that he alleges the Warden directly caused Plaintiff harm by knowingly returning him to a prison dorm where he had previously suffered bodily injury, causing him to suffer psychological harm. ECF 33.

For the reasons discussed below, it is respectfully **RECOMMENDED** that Plaintiff's claims against Warden Hicks should be **DISMISSED without leave to amend** for failure to state a claim.

## I.   BACKGROUND

Plaintiff is a Florida state prisoner currently housed at Santa Rosa Correctional Institution. In his First Amended Complaint, Plaintiff alleges that on April 12, 2019, a "shake-down team" of correctional officers[1] physically assaulted him causing him bodily injury. Specifically, Plaintiff alleges that Officer D. Waldeck ordered Plaintiff out of his cell with his hands behind his head, and he "complied." ECF 12 at 7. Plaintiff further alleges:

> After being pulled out of my cell, Waldeck started being hostile with me and telling me that my hands was not placed behind my head properly, and as I began to question him on his request he then told me to place my hands behind my back and submit to hand restraints in which I also complied… After submitting to hand restraints and being compliant Officer Waldeck, He struck me in the back of my head where I fell to the ground face first and while I was on the ground the rest of the Officers who were present, Officer C. Hill, Officer M. Flowers, Sgt. K. Corbin, Sgt. T. Bussey, Sgt. S. Driggers, Sgt. J. Adkins, Sgt. A. Vann, and Sgt. J. Conroy all joined in on the assault and began to punch and kick me while I was on the ground. One of those same officers also stuck his hand inside

---

[1] In addition to Warden Hicks, Plaintiff has also brought § 1983 claims against correctional officers C. Hill, M. Flowers, and D. Waldeck, as well as sergeants T. Bussey, S. Driggers, J. Adkins, A. Vann, and J. Conroy in their individual capacity. See ECF No. 12. Only Warden Hicks has filed a Motion to Dismiss in this case.

my right eye and tried to yank it out causing me to lose my sight temporarily while another one of those officers grabbed my left hand which was already cuffed and began to pull my fingers in all separate directions in a forceful and menacing way causing permanent damage on my left pinky finger where an X-ray has been taken on that finger after the assault and the results have determined that my left pinky finger is dislocated permanently and is in need of surgery… I was completely knocked out and on (sic) conscious when I was being escorted from the [dorm] and into the confinement building where I can remember going in and out of consciousness and instead of getting a transporting device …. those officers savagely used my leg and hand restraints to drag me out of [the dorm] and once I was outside they scraped my face all over the concrete floor where I experienced another physical and verbal assault.

*Id.* at 7-9.

Plaintiff's allegations with respect to Warden are as follows:

Thirty days after the incident had occurred… Warden M. Hicks decided to put me back in the same dorm and on the same compound where I suffered a major panic attack and had to be transported to a mental facility at Santa Rosa Correctional Institution after a Psychological doctor at Cross City Correctional Institution had did a valuation (sic) on me and found me to be incoherent…. Warden M. Hicks showed negligence by putting me back into a dangerous and hostile environment where I was in constant fear and paranoia when I was physically assaulted by his officers puting (sic) my life and freedom and liberty at risk and that kind of idiotic and careless behavior should not be excepted (sic) and Warden M. Hicks along with his officers need to be held accountable. If I was to do anything to one of these pathetic officers after he put me back on the compound I would've been in the county jail facing a new charge and that type of double standard should not be accepted anywhere because it shows favoritism to one party while completely ignoring the other. That is racism and cruelty in its highest level and they need to be held accountable for their actions.

*Id.* at 10.

## II.  LEGAL STANDARDS

"Federal Courts must 'look behind the label' of an inmate's *pro se* [filings] and determine whether there is any framework under which his claims might be cognizable." *United States v. Nickson*, 521 F. Appx. 867, 868 (11th Cir. 2013) (quoting *United States v. Jordan*, 915 F.2d 622, 624-25 (11th Cir. 1990)). Nevertheless, the court may dismiss a complaint under Fed. R. Civ. P. 12(b)(6) that fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the federal courts give liberal construction to *pro se* filings, courts "have required them to conform to procedural rules." *Albra v. Advan., Inc.,* 490 F.3d 826, 829 (11th Cir. 2007).  Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Twombley*, 550 U.S.

at 555.  While the Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level." *Id.*  The standard on a Rule 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations.  See *Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986).

## II.   Discussion

Construing Plaintiff's Complaint liberally, Plaintiff purports to assert two constitutional deprivation claims against Warden under 48 U.S.C. § 1983.  First, Plaintiff alleges that Warden failed to supervise the correctional officers who engaged in his alleged assault.  Second, Plaintiff alleges that Warden caused Plaintiff's mental breakdown by returning him to the prison dorm where the alleged assault took place. The Court addresses both claims below.

### A. Vicarious Liability Under § 1983

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v Parnell,* 193

5

F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); *Gonzalez v. Reno*, 325 F.3d 1228 (11th Cir. 2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability). Instead, supervisor liability under § 1983 occurs when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged unconstitutional deprivation. *Gonzalez*, 325 F.3d at 1234.

As the Eleventh Circuit explained in *Cottone v. Jenne*, 326 F.3d 1352 (11th Cir. 2003):

> The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy results in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.* at 1360 (internal citations omitted) (citing *Gonzalez,* 325 F.3d at 1234-1235) (additional citations omitted).

"'The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous.'" *Cottone*, 326 F.3d at 1360 (quoting *Gonzalez*, 325 F.3d at 1234). Here, Plaintiff does

6

not allege that Warden personally participated in the alleged unconstitutional conduct which led to Plaintiff's bodily injuries. To the extent Plaintiff alleges that Defendant Hicks was "negligent" in his failure to supervise the officers, who Plaintiff alleges assaulted him at the dorm, that is not sufficient. Moreover, the decision to return Plaintiff to the dorm where he was allegedly assaulted, if true, does not rise to the level of "widespread abuse" or a "custom or policy" or "deliberate indifference" to Plaintiff's constitutional rights required to state a claim under § 1983. Finally, there is no allegation that Warden directed the other correctional officers to assault Plaintiff or that he failed to stop the alleged assault.

"The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). "A policy or custom is established by showing a persistent and widespread practice and an entity's actual or constructive knowledge of such customs, though the custom need not receive formal approval." *Id.* (citing *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986)). The policy or custom must be the "moving force" behind the constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 389


(1989). Plaintiff has alleged no policy or custom let alone one that was the "moving force" of his alleged constitutional deprivation.

In sum, Plaintiff, has not satisfied the "extremely rigorous" standard to impose supervisory liability on Warden under § 1983. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).

### *B. Failure to Protect Under § 1983*

In addition to claiming that Warden was negligent in his supervision, Plaintiff also suggests that Warden is directly responsible for Plaintiff's "major panic attack" after the Warden sent Plaintiff back to the dorm thirty-days after the alleged assault, resulting in Plaintiff's placement in a mental facility.

> Warden M. Hicks showed negligence by putting me back into a dangerous and hostile environment where I was in constant fear and paranoia when I was physically assaulted by his officers puting (sic) my life and freedom and liberty at risk and that kind of idiotic and careless behavior should not be excepted (sic) and Warden M. Hicks along with his officers need to be held accountable.

> ECF No. 12 at 10.

> …Warden M. Hicks decided to place the Plaintiff back in the same dorm and on the same compound where the Plaintiff suffered a major panic attack and had to be transported to a mental health facility at Sant[a] Rosa Correctional Institution after the Psychological doctors at the institution did and evaluation on the Plaintiff and found him to be incoherent; in which Plaintiff stated that Warden Milton Hicks showed negligence by placing the Plaintiff back into a dangerous and

hostile environment where the Plaintiff was in constant fear and paranoia.

ECF No. 33 at 2.

The flaw in Plaintiff's claims for failure to protect under § 1983 is that Plaintiff offers no facts suggesting that Warden was "deliberately indifferent" in placing him in the same dorm and instead merely alleges that the Warden was negligent for doing so. In addition to this shortcoming Plaintiff's claim fails because he alleges only psychological harm, which is insufficient under the PLRA..

For a prison official to be constitutionally liable for failing to protect the safety of an inmate, the prisoner must produce "sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant's deliberate indifference to that harm; and (3) causation." *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). (quoting *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995)). Deliberate indifference requires a showing that the defendant official "must have been subjectively aware of the substantial risk of serious harm in order to have had a sufficiently culpable state of mind." *Carter,* 352 F.3d at 1349. (quoting *Farmer*, 511 U.S. at 834-38) (internal quotations omitted).

For a prison official to be liable for failure to protect an inmate, the

9

official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official must also 'draw that inference.'" *Carter*, 352 F.3d at 1349. (quoting *Farmer*, 511 U.S. at 837).  A "generalized awareness of risk … does not satisfy the subjective awareness requirement," because "merely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Carter*, 352 F.3d at 1350 (quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990)).

The Amended Complaint contains no allegations (even liberally construed) that Warden should have known Plaintiff would have a mental breakdown if he was returned to the dorm.

The final (and fatal) flaw to Plaintiff's claims is that he alleges only psychological harm arising from Warden's alleged conduct.  Under the PLRA "[C]ompensatory damages under § 1983 may be awarded only based on actual injuries caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated."  *Slicker v. Jackson*, 215 F.3d 1225, 1229 (11th Cir. 2000); see also *Hoever v. Marks*, 993 F.3d 1353, 1358 (11th Cir. 2021) ("[T]he text of § 1997e(e) [of the PLRA] bars only requests for compensatory damages stemming from purely mental or emotional harms.").  Under 42 U.S.C. §

10

1997e(e), to recover compensatory damages for mental or emotional injury suffered while in custody, a prisoner bringing a § 1983 action must demonstrate a physical injury.[2]

In *Harris v. Garner*, 216 F.3d 970, 974 (11th Cir. 2000), the Eleventh Circuit fused the physical injury analysis under § 1997e(e) with the framework set out by the Supreme Court in *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), for analyzing prisoner civil rights claims.  *Harris v. Garner*, 190 F.3d 1279 (11th Cir. 1999), *vacated by* 197 F.3d 1059 (11th Cir.1999), *and reinstated in relevant part by* 216 F.3d 970 (11th Cir. 2000).  Thus, to satisfy section § 1997e(e), a prisoner seeking monetary damages for mental or emotional injury must demonstrate more than de minimus "physical injury."  *Harris*, 190 F.3d at 1286-87; *See also Osterback v. Ingram*, 2000 WL 297840 (N.D. Fla.), aff'd 263 F.3d 169 (11th Cir. 2001) (table decision), cert. denied, 536 U.S. 906 (2002).

---

[2] *Hoever* goes on to state that § 1997e(e) "does not bar punitive damages in the absence of physical injury." 993 F.3d at 1358.  The purpose of punitive damages "is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior." *Id.* at 1359 (citations omitted). "The focus of punitive damages is on the character of the tortfeasor's conduct, not on any compensable injury that may flow from that conduct." *Id.* (internal citation and quotation omitted). "Therefore, punitive damages are not awarded to a plaintiff "for" compensation of his mental or emotional injury; they are imposed on a defendant "for" deterrence and punishment of his egregious conduct." *Id.* at 1360. Here, the allegation that the Ward returned Plaintiff to his prior dorm room, without more, does not rise to the level of egregious conduct contemplated for the imposition of punitive damages.

Under the PLRA, a prisoner may not bring a federal civil action seeking compensatory damages "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997(e).  Because Plaintiff has alleged no physical injury in connection with this second deprivation claim, he is barred by the PLRA from seeking compensatory damages.

In sum, to the extent Plaintiff alleges that Warden caused his psychological harm, he has not stated a "deliberate indifference" claim under § 1983 for failure to protect.  And, because Plaintiff alleges that Defendant Hicks caused psychological harm only, he is not entitled to monetary damages for this alleged deprivation under the PLRA.

Upon careful consideration of the First Amended Complaint, Plaintiff's claims against Defendant Hicks in his official and individual capacity, therefore, should be dismissed.

The only remaining question is whether Plaintiff should be granted leave to amend the First Amended Complaint.  Ordinarily, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief," *Foman v. Davis*, 371 U.S. 178, 182 (1962), leave to amend "should be freely given." Fed. R. Civ. P. 15(a).  A district court, nevertheless, may properly deny leave to amend the complaint when such

amendment would be futile.  *Foman*, 371 U.S. at 182.  Here, the Court concludes that Plaintiff cannot cure the deficiencies in the Complaint required to maintain a § 1983 against Warden for the deprivations alleged. Thus, granting Plaintiff any further leave to amend would be futile.

## IV.  CONCLUSION

Accordingly, it is respectfully **RECOMMENDED** that Defendant Hick's Motion to Dismiss First Amended Complaint, ECF No. 32, should be **GRANTED.** Plaintiff's claims in the First Amended Complaint, ECF No. 12, against Defendant Warden Milton Hicks should be **DISMISSED without leave to amend** for failure to state a claim upon which relief may be granted.[3]

**IN CHAMBERS** this 26th day of July 2021.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

---

[3]  This report and recommendation does not address nor dispose of Plaintiff's claims against the other defendants in this action.

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.[4]

---

[4] Upon review of the Florida DOC online inmate locator, it appears that Plaintiff is confined at the Santa Rosa CI.  The Clerk is directed to forward a copy of this Report and Recommendation to his address of record with the Court and to Santa Rosa CI.